IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

US BANK TRUST, NATIONAL
ASSOCIATION, AS TRUSTEE OF
AMERICAN HOMEOWNER
PRESERVATION TRUST SERIES
2015A+,

    Plaintiff,

vs.

WALWORTH COUNTY, WISCONSIN,

and

VALERIE ETZEL
WALWORTH COUNTY TREASURER,

    Defendants.

Case No. 2:21-cv-00451

**SUPPLEMENTAL BRIEF OF THE DEFENDANTS**

**INTRODUCTION**

Pursuant to the Court's September 25, 2023 Order, this Supplemental Brief addresses the applicability of the Supreme Court's decision in *Tyler v. Hennepin County, Minnesota*, 143 S. Ct. 1369, 215 L. Ed. 2d 564 (2023). In short, *Tyler* does not affect the issues before this Court. This Court should still find that US Bank has no claim to proceeds from Walworth County's sale of the tax forfeited property. US Bank is not a taxpayer to which *Tyler's* decision can protect. US Bank also lacks standing to bring a Fifth Amendment claim under *Tyler*, as the mortgage document did not assign US Bank the plausible cause of action that only belongs to Francisca Casillas. Despite *Tyler*, nothing has been "taken" from US Bank because the In Rem judgment constitutionally extinguished US Bank's lien. Wisconsin's long-standing statutory framework, dating back to

1

1878, terminates lienholder interests. This framework has been upheld by Wisconsin courts in *Oosterwyk* and *Ritter*, which identify due process as the critical factor. *Ritter v. Ross*, 207 Wis. 2d 476, 558 N.W.2d 909 (Ct. App. 1996). *Oosterwyk v. Milwaukee Cty.*, 31 Wis. 2d 513, 143 N.W.2d 497 (1966). As such, *Ritter* and *Oosterwyk* remain dispositive of US Bank's claim.

## ARGUMENT

**I.**     ***Tyler v. Hennepin County* offers no new protections for US Bank because US Bank is not a taxpayer.**

The same arguments advanced by Walworth County in its original motion for judgment on the pleadings remain valid. US Bank's takings claim fails because Walworth County obtained fee simple title to the property consistent with the legislative intent of Wis. Stat. § 75.521(8), that the In Rem judgment "bar former owners and quiet title."[1].

*Tyler* is a groundbreaking case, yes. The Supreme Court found that Ms. Tyler had alleged a plausible takings claim because Minnesota's tax forfeiture procedure did not offer Ms. Tyler an opportunity to claim the surplus proceeds that exceeded the tax liability of her former home. *Tyler*, 215 L. Ed. 2d at 577. In finding so, the Supreme Court not only recognized a taxpayer's right to surplus under Minnesota common law, but it also recognized that property rights are defined by "'traditional property law principles,' plus historical practice and [the Supreme Court's] precedents." *Id*. at 571. Numerous states will update their procedures to provide an opportunity for taxpayers to request surplus proceeds. The traditional property law principles and the Court's precedents, however, only recognized a plausible takings claim for the *taxpayer*. Those protections do not extend to a lienholder who paid <u>zero</u> taxes on the property at issue in this case.

---

[1] All statutory cites reference Wisconsin Statutes 2019-20.

2

Case 2:21-cv-00451-SCD     Filed 10/06/23     Page 2 of 12     Document 29

The Supreme Court's choice of words was intentional. "The principle that a government may not take more from a *taxpayer* than she owes … ." *Id*. at 572. "Our precedents have also recognized the principle that a *taxpayer* is entitled to the surplus in excess of the debt owed." *Id*. at 573. "A *taxpayer* who loses her $40,000 house to the State to fulfill a $15,000 tax debt has made a far greater contribution to the public fisc than she owed." *Id*. at 577.

US Bank never asserts that it paid any taxes. Rather, it is the non-payment of taxes that led US Bank to its own demise. Had US Bank paid even one year's worth of taxes and penalty on the past due amount to redeem the property from the In Rem proceeding, or had it paid the taxes to transfer title after it purchased the property at the sheriff's sale in its own foreclosure proceeding, US Bank would not be seeking relief from this Court. See Walworth County Circuit Court Case No. 18CV315.[2] While *Tyler* may provide additional relief to Francisca Casillas, the taxpayer of this property who is most similarly situated to Ms. Tyler, it does not provide relief for US Bank. *Tyler* does not create a plausible takings claim for a mortgagee, a lienholder, or any other creditor.

**II.** ***Tyler* offers no new protections for US Bank because US Bank has no standing to bring this constitutional claim.**

US Bank does not sufficiently allege that it has standing to bring this claim. Though only now being raised, this Court "has an independent obligation to assure that standing exists." *Summers v. Earth Island Inst*., 555 U.S. 488, 499 (2009). US Bank asserts that it was assigned the right to proceeds through a provision of the mortgage but does not show how that assignment of proceeds translates into an assignment of a cause of action to claim surplus. Without standing to bring the cause of action, the case should be dismissed.

---

[2] Records for this case are attached as Exhibits F through J to Defendants Walworth County and Walworth County Treasurer's Brief in Support of Motion for Judgment on the Pleadings (R. 14).

Number 11 of the mortgage document states "All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender." (R. 1-2 at 8). It additionally states, "the proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to the Lender." *Id*. at 9. Miscellaneous Proceeds are defined under the mortgage as "any compensation, settlement, award of damages, or proceeds paid by any third party … for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property … ." *Id*. at 2. This language, however, does not assign US Bank the ability to seek proceeds on behalf of the Casillases and it does not assign a cause of action under the Takings Clause to US Bank.

The important distinction between an assignment of proceeds versus an assignment of a cause of action has already been outlined in a case brought by US Bank to claim surplus proceeds in Ohio state court. *State ex rel. US Bank Trust N.A. v. Cuyahoga Cty*., 2021-Ohio-2524, ¶14 (8th District Ohio Court of Appeals, 2021), upheld on narrower grounds by *State ex rel. US Bank Trust, Nat'l Ass'n v. Cuyahoga Cnty*., 2023-Ohio-1063, ¶34 (holding that dismissal of a mandamus action was appropriate because US Bank had an adequate remedy in the ordinary course of the law). In finding against US Bank's allegation that an assignment of proceeds equated to an assignment of the cause of action to obtain the proceeds, the Ohio Court of Appeals found:

> The assignment of a cause of action is distinct from the assignment of proceeds or the right to funds that results from a cause of action. The mortgage only assigned the right to any proceeds emanating from condemnation or other similar actions. "[W]here assignment is at issue, courts — both before and after the founding — have always permitted the party with legal title alone to bring suit." The right assigned in the mortgage was a contractual right to funds between the mortgagee and mortgagor. However, the property right inherent in the mortgage was extinguished by the foreclosure action. It is a dubious proposition that the assignment of a right to miscellaneous proceeds provides sufficient standing to initiate a suit. Even if provisions of the mortgage are still enforceable as between the parties to the mortgage after foreclosure, the assignment of proceeds does not

necessarily lead to the conclusion that US Bank has a possessory interest in the property at issue or even a contingent interest.

*Id*. at ¶15, internally quoting *Sprint Communications Co., L.P. v. APCC Servs*., 554 U.S. 269, 271 (2008), paragraph a of the syllabus, all other internal citations omitted.

This Court should find that the contractual clause assigning proceeds to the mortgagee is insufficient for standing. The mortgage was extinguished by the foreclosure action. Though US Bank may have standing to pursue a breach of contract against the mortgagor, standing to bring a takings claim does not exist.

A claim under the Takings Clause requires that a plaintiff show several things: (1) that the government took his property; (2) that the taking was for public use; and (3) that the government has not paid just compensation. *Conyers v. City of Chicago*, 10 F.4th 704, 710-11 (7th Cir. 2021). "Implicit in this scheme is the predicate requirement that the private property must belong to the plaintiff. This is not one of those situations in which a plaintiff would be permitted to assert third-party rights." *Id*. at 711, citing *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (third-party rights may be raised only if the party raising the claim has a close relationship with the person who possesses the right, and only if there is a hindrance preventing the possessor from protecting his own interests).

US Bank does not assert a close relationship with the Casillases and there was no hindrance for US Bank to prevent it from protecting its own interest. Creditors like US Bank are "sophisticated creditors" with "means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are therefore likely to be initiated." *Mennonite Bd. of Missions v. Adams*, 462 U.S 791, 799 (1983). US Bank could have paid the taxes, could have redeemed the property from the In Rem, could have filed an answer, could have repurchased the

property (had it not moved to vacate its confirmation of sheriff's sale in 18CV315), and could have filed a claim for damages in state court. Wis. Stats. §§ 75.521(5), 75.521(7), 75.521(14a).

### III. *Tyler* offers no new protections for US Bank because US Bank is not an owner of the property under Wisconsin law.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). US Bank cannot assert a claim belonging to the Casillases. The general rule is that "a litigant may only assert his own constitutional rights or immunities." *McGowan v. Maryland*, 366 U.S. 420, 429 (1961).

Wisconsin follows the lien theory of mortgages, meaning that the mortgagee (US Bank) does not have legal title. "The full ownership, both equitable and legal, is in the mortgagor, and the interest of the mortgagee is that of a lien holder. The mortgagee is merely the holder of a security interest." *Mutual Federal S & L Ass'n v. Wisconsin Wire Works*, 58 Wis. 2d. 99, 104, 205 N.W.2d 762 (1973).

US Bank was not the owner of the property at the time of the alleged taking because US Bank's lien was extinguished through the Judgment In Rem. US Bank did not preserve its right to claim it was the owner via its Wisconsin Chapter 846 mortgage foreclosure, either. Though its sheriff's sale was confirmed by the Walworth County Circuit Court in Case No. 18CV315, any ownership interest established by US Bank through that action was temporary, if that, and later vacated, as US Bank later moved to dismiss its foreclosure action on June 18, 2019, two months before Walworth County sold the property. See Exhibit K, Certified Copy of Motion to Vacate Judgment and Dismiss Case without Prejudice and Release of Lis Pendens, Walworth County Case No. 18CV315 (R. 20-1). US Bank's request was granted by the court on July 2, 2019. See Exhibit

L, Certified Copy of Order Dismissing Case Without Prejudice and Releasing Lis Pendens, Walworth County Case No. 18CV315 (R. 20-2).

For these reasons, the District Court's previous rationale remain sound:

> The property went to auction [in 18CV315] on April 4, 2019. US Bank was the highest bidder at $68,097.60 and a Walworth County court confirmed the sale on May 20, 2019. Following that confirmation, US Bank had a judgment against Francisca Casillas valued at $215,775.50 – $158,611.22 for the default judgment in 2018 plus $57,164.28 in interest and other costs – along with ownership of the home at 926 East Wisconsin Street *pending payment of taxes and recording fees*.

(R. 21 at 2) (emphasis added).

> Furthermore, US Bank purchased the property at auction, making it the owner, *so long as it completed its statutory obligations under Chapter 846*.

*Id.* at 3 (emphasis added).

Judgment In Rem was entered June 17, 2019. (R. 14-5). By that time, US Bank had never paid any of the taxes, and under Wisconsin's lienholder theory of mortgages, it was not the owner, either. Thus, US Bank cannot use *Tyler* to bolster its arguments that just compensation is owed to it. *Tyler* offers no protections to lienholders that neglect their obligation to protect their interests.

The Wisconsin circuit court validly entered default judgment against US Bank for failing to answer in the In Rem proceeding. As such, US Bank is "forever barred and foreclosed of any right, title, interest, claim, lien or equity of redemption in the subject property." Wis. Stat. § 75.521(5). This remains true even in light of the *Tyler* decision.

IV. **No Supreme Court precedent, nor any traditional property law principle, gives a lienholder any rights to surplus unless a statute provides it.**

Though Wisconsin law is cited to by the Supreme Court in *Tyler* to support a takings claim referencing the taxpayer, that same Wisconsin law discredit's US Bank's position that something has been taken from it. The Supreme Court observed that "[s]tates, including Minnesota, continued to require that no more than the minimum amount of land be sold to satisfy the outstanding tax

debt." *Tyler*, 215 L. Ed. 2d at 573. The Court references an 1859 Wisconsin law, among 4 other state statutes, in footnote 2 of its opinion:

> Many of these new States required that the land be sold to whichever buyer would "pay [the tax debt] for the least number of acres" and provided that the land forfeited to the State only if it failed to sell "for want of bidders" because the land was worth more than the taxes owed.

*Id.* citing, inter alia, 1859 Wis. Laws Ch. 22, pp.22-23, §§7,9.

That law of 1859 mandated that the treasurer "commence the sale of those lands, on which the taxes, interest and charges shall not have been paid, ... until so much of each parcel thereof, shall be sold, as shall be sufficient to pay the taxes, interest and charges thereon, and all moneys received on such sale, shall be paid into the county treasury." 1859 Wis. Laws Ch. 22, pp.22-23, §6. The treasurer would portion off a northern part of the lands and offer such for the price of the taxes owed. *Id*. at §7. If no bids on that portion satisfied the amount owed, then the whole of the parcel was sold. *Id*. Implicit in law is that if only a portion of the land was sold to satisfy the tax debt, then the remaining portion of the parcel was still owned by the taxpayer. **No additional land was sold to satisfy the taxpayer's third-party debts**.

US Bank's interest can be terminated through an action In Rem in which it received notice and due process. *Nelson v. City of N.Y.*, 352 U.S. 103, 110 (1956); *Oosterwyk,* 31 Wis. 2d at 518*; Leciejewski v. Sedlak*, 116 Wis. 2d 629, 640, 342 N.W.2d 734 (1984); *Ritter*, 207 Wis. 2d at 495. This is further supported by Supreme Court precedent in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983). The Court recognized that sufficient notice of a tax sale is required for a mortgagee because a "mortgagee possesses a substantial property interest that is significantly affected by a tax sale" and further recognized that "a tax sale may result in the **complete nullification of the mortgagee's interest**, since the purchaser [of a tax deed] acquires title free of all liens and other encumbrances at the conclusion of the redemption period." *Id*. at 798 (emphasis

8

added). This is in line with the extinguishment of a lienholder's rights in an action under Wisconsin's In Rem which provides lienholders with proper notice and sufficient due process, as earlier outlined by this Court. (R. 21). *Tyler* does not change this analysis.

Wisconsin's 2019 law reflects the common law that US Bank is not entitled to surplus proceeds after a tax forfeiture In Rem proceeding. Wisconsin Attorney General Opinions from 1946 and 1973 reference the long standing principle that "a valid tax deed cuts off all former titles and liens" (35 OAG 429 (1946)(citing to *Cole v. Ostrand*, 131 Wis. 454, 464 (1907)) and the language vesting a county with "an absolute estate in fee simple" had been "virtually unchanged for many years." (62 Atty. Gen. 234)(citing to Section 1176 Rev. Stats. 1878 and 35 OAG 429 (1946)).

At the Court of Appeals, US Bank asserted *First Wisconsin Trust Co. v. Rosen*, 143 Wis. 2d 468 (1988), to support its proposition that Wisconsin common law recognizes a lienholder's right to surplus proceeds. (See Appellate Record of Case No. 22-1168, Appellant's Reply Brief, Document 29 at 5-6). *Rosen* does just the opposite of what US Bank alleges. *Rosen* specified that Wis. Stat. § 846.162, which creates a mechanism for lienholders in mortgage foreclosures to file a claim for surplus proceeds, **has been determined to be a procedural statute**. *Rosen*, 143 Wis. 2d at 472. Therefore, "nothing in sec. 846.162 can be viewed as substantive, creating or affirming any rights or priorities in the surplus." *Id*.

V.     *Tyler* **does not invalidate the district court's previous reasoning.**

The district court's prior rationale can be applied again because *Tyler* did not change the district court's findings relating to US Bank:

> [T]he county's foreclosure terminated any interest US Bank had in the property. As such, when the county retained the surplus it received from the sale, it was not "taking" anything belonging to US Bank.

9

Case 2:21-cv-00451-SCD     Filed 10/06/23     Page 9 of 12     Document 29

(R. 21 at 12).

> Wisconsin law unambiguously gives counties the right to take ownership of property – in fee simple absolute – to settle tax debts.

(*Id.* at 13).

Both of these findings and conclusions remain sound and true because of the distinction between US Bank and the taxpayer/owner of the property at issue in this case, Francisca Casillas.

## **CONCLUSION**

Since the Supreme Court delivered its opinion in *Tyler*, Francisca Casillas would be in a far better position to bring forward an action because she, alone, is the plaintiff that *Tyler* applies to. This Court's plaintiff, however, is US Bank and US Bank's contractual assignment of proceeds is insufficient standing for bringing Ms. Casillas' constitutional claim. Despite being the highest bidder at the sheriff's sale and having a $215,775.50 judgment against a widow, US Bank never paid taxes on this property. (R. 21). It also failed to redeem the property, file an answer, or make a claim for damages in the parallel In Rem action brought by Walworth County. Consistent with the common law of Wisconsin, Walworth County obtained title in fee simple absolute by default judgment. The County obtained no windfall benefit to the detriment of US Bank. US Bank claims the County took surplus from it, despite its failure to pay even one cent of taxes on its asset. US Bank obtained the windfall, ignored its notice and opportunities within the In Rem, and sat on its hands through the damages period allowed under Wis. Stat. § 75.721(14a). The Takings Clause, even in light of the Supreme Court's decision in *Tyler*, does not protect US Bank from the natural and lawful consequences of its own negligence.

10

Case 2:21-cv-00451-SCD     Filed 10/06/23     Page 10 of 12     Document 29

Dated this 6th day of October, 2023.

                WALWORTH COUNTY CORPORATION COUNSEL
                Attorney for Defendants WALWORTH COUNTY, WISCONSIN
                and VALERIE ETZEL as WALWORTH COUNTY
                TREASURER

                By:     <u>Electronically signed by Estee E. Scholtz</u>
                            Estee E. Scholtz
                            Deputy Corporation Counsel
                            State Bar No. 1065852

Drafted by:
Deputy Corporation Counsel Estee E. Scholtz
State Bar No. 1065852
Walworth County Judicial Center
1800 County Road NN
P.O. Box 1001
Elkhorn, WI 53121
corpcounsel@co.walworth.wi.us
Phone: 262-741-7221
Fax: 262-741-7224

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2023, the foregoing Supplemental Brief of Defendants was served through the Court's ECF system and by email on counsel of record on October 6, 2023 upon Marc E. Dann, mdann@dannlaw.com, and Casey Cross, ccross@chlawllc.com.

*/s/ Estee E. Scholtz*
Estee E. Scholtz
State Bar No. 1065852