IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| US BANK TRUST, NATIONAL ASSOCIATION, AS TRUSTEE OF AMERICAN HOMEOWNER PRESERVATION TRUST SERIES 2015A+ | * | CASE NO. 2:21-CV-451-SCD |
| | * | Magistrate Judge Dries |
| PLAINTIFF | * | |
| -vs- | * | PLAINTIFF'S SUPPLE-MENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
| WALWORTH COUNTY, WISCONSIN, et al. | * | |
| DEFENDANTS | * | |

In compliance with the Court's September 25, 2023 order, Plaintiff, US Bank Trust, National Association, As Trustee Of American Homeowner Preservation Trust Series 2015A+ ("US Bank") submits its supplemental memorandum in opposition to Defendants' Motion for Judgment on the Pleadings.

## INTRODUCTION

This matter is on remand from Seventh Circuit Court of Appeals after that Court vacated this Court's prior decision dismissing the case. The mandate issued by the Court of Appeals requires this Court to reconsider its prior decision in light of the Supreme Court's recent decision in *Tyler v. Hennepin County*. To that end, the Court has requested supplemental briefing addressing how *Tyler* affects this case. Plaintiff submits that *Tyler* controls the outcome of this matter.

The United States Supreme Court recently issued *Tyler v. Hennepin County*, 598 U.S. \_\_\_, 215 L. Ed. 2d 564, 143 S. Ct. 1369 (2023). The issues presented in *Tyler* are identical in all relevant respects to those before this Court. In *Tyler*, Ms. Tyler's real property was forfeited to Hennepin County, Minnesota for unpaid real estate taxes and assessments totaling $15,000. *Id*. 215 L. Ed. 2d at 569. After forfeiture, Hennepin County sold the property for $40,000 and retained the entirety of the sale proceeds. *Id*. Aside from the names of the parties, those are essentially the facts of this case.

There are, of course, two facial differences between the cases. The most obvious is the nature of US Bank's initial interest in the property–a mortgage interest, as opposed to ownership. Also, the Court might feel compelled to examine how Wisconsin's tax collection system differs from Minnesota's. However, neither of those differences are substantive.

## A. US Bank possessed a valuable property interest subject to the Takings Clause.

One factor that does distinguish this case from *Tyler* is the nature of the interest taken by the County. Ms. Tyler asserted her takings claim as the prior owner of the property. Here, US Bank asserts its claim on several bases. First, it was the legal owner of the property at the time the County sold the property. Because US Bank was the holder of legal title to the Property, *Tyler* fully controls the case. Second, if US Bank was not the legal owner of the Property, then it had a mortgage interest in the property. The Takings Clause protects all cognizable interests in property, not

2

just title to the fee. Finally, by virtue of the assignment of condemnation proceeds in its mortgage contract, US Bank also stands in the shoes of the mortgagor, i.e. the property owner.

### 1. US Bank was the fee title holder at the time the County obtained title.

At the time the County took title to the property, Plaintiff was actually the owner of the fee title. In May 2018, US Bank began foreclosure proceedings on the property by registering a lis pendens with the register of deeds in Walworth County. R. 14-7 at 1; R. 19-1. By default judgment on August 23, 2018, the Walworth County Circuit Court awarded US Bank judgment. R. 14-7 at 4. The property went to auction on April 4, 2019, and US Bank was the highest bidder. The sale was confirmed by the court on May 20, 2019. R. 14-9, at 2; R. 19 at 4.

Once the state court confirmed the judicial sale in US Bank's mortgage foreclosure case, title to the property vested in US Bank. *Security State Bank v. Sechen*, 288 Wis.2d 168, 173, 707 N.W.2d 576 (Ct. App. 2005) (a "mortgagor's right of redemption survives until confirmation of the sale because only upon confirmation does the title vest in the purchaser.") (*quoting Gerhardt v. Ellis,* 134 Wis. 191, 195, 114 N.W. 495 (1908)). The confirmation of US Bank's foreclosure sale occurred on May 20, 2019 vesting title to the property in it. R. 14-9, at 2; R. 19 at 4. The final order in the tax foreclosure case was not filed until June 17, 2019. R. 14, p. 8, Exhibit E. And although the state court confirmation order was later vacated, US Bank was the title owner of the property on June 17, 2019, when the County obtained title through the tax foreclosure action. R. 20-2.

As the owner of the property, US Bank should be afforded the same protections the Supreme Court acknowledged Ms. Tyler possesses.

### 2. A mortgage is a property interest protected by the Fifth Amendment.

Even were the Court to disregard US Bank's ownership interest in the property, it cannot deny that a mortgagee's property right in mortgaged property is protected by the Fifth Amendment.

The Supreme Court has oft-stated that the rights of a lienholder are protected by the Fifth Amendment's takings Clause. For instance, in *Louisville Joint Stock Land Bank v. Radford*, the Court held unconstitutional a portion of that Act that permitted a court to halt a mortgagee's foreclosure of farms for several years, permitting the mortgagor to remain in possession of the property without paying the mortgagee anything.

> For the Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

*Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 602*,* 55 S. Ct. 854, 79 L. Ed. 1593 (1935); *see also*, *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987) ("A mortgagee's lien is a property interest within the meaning of the Fifth Amendment."); *Bailey v. United States*, 78 Fed. Cl. 239, 276 (Fed. Cl. 2007) ("Without question, a mortgagee's lien is 'a compensable property interest within the meaning

of the Fifth Amendment.'). The Court has also held that materialmen liens constitute property within the meaning of the Fifth Amendment. *Armstrong v. United States*, 364 U.S. 40, 48, 80 S. Ct. 1563, 1568-69, 4 L.Ed.2d 1554 (1960). And it has also stated that attachment liens are considered property within the meaning of the Takings Clause. *Dames & Moore v. Regan*, 453 U.S. 654, 689-90, 101 S.Ct. 2972, 2991-92, 69 L.Ed.2d 918 (1981). Thus, the fact that this case deals with a mortgagee's interest in property, rather than a direct ownership interest, does not alter the analysis detailed in *Tyler*.

Wisconsin law itself recognizes that all types of property interests are protected by the Takings Clause. For purposes of Fifth Amendment analysis, "[a] party has a property interest if he or she has a 'legitimate claim of entitlement' to the property, as opposed to an 'abstract need or desire' or 'unilateral expectation.' *Taplick v. City of Madison Pers. Bd.,* 97 Wis. 2d 162, 170, 293 N.W.2d 173 (1980) (*quoting Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). And protected property interests include contract rights. *State Teachers' Retirement Board v. Giessel,* 12 Wis. 2d 5, 10, (1960) (finding that a retiree's contractual interest in her pension is a property right for Fifth Amendment purposes). A mortgage interest is both a contract right and a legitimate claim of entitlement to look to specific real estate to satisfy its claim.

Indeed, US Bank possessed more than a mortgage on the property. It also possessed a contractual right to any condemnation proceeds owed to the mortgagor.

Thus, it stands in the shoes of the property owner and is entitled to the compensation owed to the mortgagor.

**B. Any differences in state law are minimal.**

There are three aspects of state law that could affect the application of *Tyler* to this case: 1) the tax collection statutes themselves, 2) state case law interpreting rights of property owners and lienholders to surplus sales proceeds, and 3) the existence of a state law remedy to recoup surplus proceeds.

<u>1. The Wisconsin statutory scheme at issue in this case is nearly identical to that considered by the Court in *Tyler*.</u>

As Walworth County acknowledged before the trial court, the Minnesota tax collection scheme presented in *Tyler* is very similar to Wisconsin's. R. 14, p. 10. The Supreme Court outlined it as follows:

> Hennepin County imposes an annual tax on real property. Minn. Stat. §273.01 (2022). The taxpayer has one year to pay before the taxes become delinquent. §279.02. If she does not timely pay, the tax accrues interest and penalties, and the County obtains a judgment against the property, transferring limited title to the State. See §§279.03, 279.18, 280.01. The delinquent taxpayer then has three years to redeem the property and regain title by paying all the taxes and late fees. §§281.17(a), 281.18. During this time, the taxpayer remains the beneficial owner of the property and can continue to live in her home. See §281.70. But if at the end of three years the bill has not been paid, absolute title vests in the State, and the tax debt is extinguished. §§281.18, 282.07. The State may keep the property for public use or sell it to a private party. §282.01 subds. 1a, 3. If the property is sold, any proceeds in excess of the tax debt and the costs of the sale remain with the County, to be split between it, the town, and the school district. §282.08. The former owner has no opportunity to recover this surplus.

6

*Id*. 215 L. Ed. 2d at 569.

Similarly, under Wisconsin's statute, whenever land has been included in a tax certificate for more than two years, the treasurer must file a public list in the office of the clerk of the circuit court of the county detailing a property that the county intends to foreclose upon. Wis. Stat. § 75.521(3). When the list is filed with the circuit court of the foreclosing county, the tax proceeding against the owners and/or mortgagees officially begins. *Id*. The County must then provide various types of notice to interested parties as provided by statute. *Id*.

To prevent foreclosure, a person with an interest in the property must either file and answer or redeem the property pursuant to statute. If no one redeems by payment or files an answer within 30 days, then title to the property vests in the county, and any person previously having an interest in the parcel "shall be forever barred and foreclosed of all of his right, title and interest in" the parcel. *Id.*

If no redemption or answer is initiated by any interested party, then the owners and/or mortgagees are in default. The county court then enters final judgment ordering and adjudges that the county is vested with an estate in fee simple absolute in the parcel, subject to all unpaid taxes and fees. Wis. Stat. § 75.521(8). The county court also enters final judgment forever barring and foreclosing any previously interested parties of any property rights, titles, claims, liens, or other equity of redemption. *Id*. The county's resulting interest is called a "tax deed," which it can freely transfer. *See* Wis. Stat. § 75.001. If the county then sells the property, the sales proceeds are distributed as outlined in Wis. Stat. § 75.36 (2019). There was no

7

provision in the version of the statute in effect at the time that permitted a lienholder to recover any of the excess sales proceeds.[1] *Id*.

There is no substantive difference between the two statutory schemes justifying a departure from the Supreme Court's analysis in *Tyler*.

<u>2. Wisconsin law recognizes a property owner's right to their property's equity in other types of governmental sales.</u>

In *Tyler*, the Supreme Court examined the history of English common law, going back to the Magna Carta, regarding the government's duty with respect to the property owner's equity in property seized for taxes. *Tyler* at 572. It also discussed how this tradition became firmly rooted in American common law. *Id.* at 572-73. It then traced its own decisions regarding the limits on the government's taxing authority. *Id.* at 573.

But it was also concerned with how Minnesota law treated surplus sale proceeds in other types of collection actions. *Id.* at 575. It noted that in private foreclosure sales, a foreclosing lienholder in Minnesota is entitled to only that amount it is owed, and any excess proceeds are to be paid to the property owner. *Id.* The Court was troubled that Minnesota's tax collection statute created a new and different rule exclusively for the benefit of the government. It concluded that "Minnesota may not

---

[1] In 2021, Wisc. Stat. § 75.36(3) was amended to require surplus sales proceeds to be distributed to lienholders and the property owner.

extinguish a property interest that it recognizes everywhere else to avoid paying just compensation when it is the one doing the taking." Id. at 576.

When Wisconsin adopted its Constitution, the people expressly adopted the English common law as it existed at the time. "All laws now in force in the territory of Wisconsin which are not repugnant to this constitution shall remain in force until they expire by their own limitation or be altered or repealed by the legislature." Wisconsin Constitution, Art. XIV, Sec. 2. The Wisconsin Supreme Court has interpreted this provision to "preserve[] the English common law as it existed at the time of the American Revolution until modified or abrogated. *State v. Hobbs,* 218 Wis. 2d 350, 364; 577 N.W.2d 825, 831 (1998).

Thus, the old English common law discussed in *Tyler* became part of Wisconsin law with the adoption of the State's Constitution. That common law constrained the government's ability to take more than the taxes actually owed.

And in other types of collection actions involving the sale of lands, Wisconsin law protects both property owners and junior lienholders. The Wisconsin Supreme Court has long recognized that "[a] surplus arising upon a sale in foreclosure takes the place of the equity of redemption; and for the purpose of determining its distribution among those entitled thereto it is regarded as land." *Waukesha Sav. Bdg. & Loan Ass'n v. Hamill*, 203 Wis. 414, 423 (1931) (quoting *Davison v. MacDonald,* 124 Misc. 726, 728, 209 N.Y.S. 145 (N.Y. Sup. Ct. 1925)).

9

Also, Wisc. Stat. § 846.162 provides that, in regular foreclosure actions, upon sale of foreclosed property, parties to a foreclosure action, such as the property owner, and un-joined lienholders may stake their claim to any excess sales proceeds. Wisc. Stat. § 846.162 ("If there shall be any surplus paid into court by the sheriff or referee, any party to the action or any person not a party who had a lien on the mortgaged premises at the time of sale, may file with the clerk of court into which the surplus was paid, a notice stating that the party or person is entitled to such surplus money or some part thereof"); *see also*, *Black River Country Bank v. Gerdes*, 337 Wis. 2d 735, ¶ 26 (Ct. App. 2011).

It is important to note that Section 846.162 is "a procedural statute, creating a mechanism for parties to the action and nonparty lienholders to file a claim for surplus. . . . Nothing in sec. 846.162 can be viewed as substantive, creating or affirming any rights or priorities in the surplus. *Heartland Credit Union v. Chocolaterian LLC*, 399 Wis. 2d 841, ¶ 46 (Ct. App. 2021) (quoting *First Wis. Tr. Co. v. Rosen, supra*, 143 Wis. 2d at 472). Thus, the statute is not the legal source of a lienholder's right to excess proceeds. That right must therefore arise under common law and contract.

Perhaps more specific to this case, Wisconsin common law recognizes that upon sale of foreclosed property, although a lienholder's interest in the real estate is terminated, the lienholder may still look to the sales proceeds to satisfy its claim.

> [W]hen property is sold at a foreclosure sale, the property is transferred to the purchaser who receives the interest of the mortgagor and whatever interest the other parties to the suit possessed at the commencement of the action. As a result, those who

10

> were parties to the action can no longer assert any claim or right of interest against the property. The interest of such parties is deemed "foreclosed," leaving them to look only to sale proceeds for satisfaction of their claim.

*Walworth State Bank v. Abbey Springs Condo. Ass'n*, 368 Wis. 2d 72, ¶ 22 (2016) (quoting *First Wis. Trust Co. v. Rosen*, 143 Wis. 2d 468, 472-73, 422 N.W.2d 128 (Ct. App. 1988)); *Littlejohn v. Turner,* 73 Wis. 113, 124 (1888) (recognizing the power of a court to order a foreclosure sale of property free of the incumbrances and transferring the lien of the incumbrances to the proceeds of the sale instead of to the property itself."); *see also Putnam v. Bicknell*, 18 Wis. 333, 337 (1864) (holding that a junior lienholder had an equitable interest in surplus funds from a foreclosure sale).

Therefore, under Wisconsin law, a normal creditor seeking collection through a judicial sale of real property could never keep sales proceeds in excess of its claim. Yet, that is what the County asks the Court to permit. Like Minnesota, Wisconsin's statutory tax collection scheme sought to carve out for county governments a special rule not available to others. But the Supreme Court has held that states may not manipulate property laws in such a manner. *Tyler,* 215 L. Ed. 2d at 575.

<u>3. There is no mechanism under Wisconsin law for a property owner to claim excess proceeds.</u>

In its decision, this Court interpreted Wis. Stat. § 75.521(14a) to give lienholders a two-year window in which "to recover the fair market value of their interest." *Decision And Order Granting Defendants' Motion For Judgment On The*

11

*Pleadings*, Doc. 21, pp. 5-6. US Bank respectfully suggests that the Court's reading of the statute was overly-broad. The statute reads, more fully, as follows:

> If the court determines that such person's right, title and interest in said land ***was unjustly foreclosed and lost because*** said person's interest in ***such lands was not subject to taxation***, special assessment, special charge or special tax at the time of the levy of the tax, assessment or charge, for nonpayment of which said lands were foreclosed, ***or that in fact such tax,*** special assessment, special charge or special tax ***was paid by said owner***, ***or that the tax lien*** upon which the judgment of foreclosure in rem was based ***was barred by the statute of limitations***, ***or*** if ***such person lost said property through fraud*** without fault on his or her part, the court shall determine the fair market value of said land or of said person's interest therein as hereinabove set forth.

Wis. Stat. § 75.521(14a) (2019) (emphasis added).

Therefore, only if the tax foreclosure was wrongful in one of the enumerated ways can a party seek to recover its fair market value in a later suit. This provision does not afford a method to recover just compensation for a constitutional taking.

### C. Failure to answer in the tax foreclosure proceeding does not bar a mortgagee's claim to surplus sales proceeds.

The County makes much of the fact that US Bank did not appear or answer in the tax foreclosure proceeding. That failure, however, is of no import. In *Tyler*, there is no indication that Ms. Tyler responded to the government's lawsuit for determination of the tax liability. But, as here, it was not the state court determination of a tax liability that is at issue. The issue before the Court is the County's retention of the entirety of the property and its sale proceeds. That retention is the basis for US Bank's takings claim, and that occurred well after the state court proceedings were concluded.

12

Case 2:21-cv-00451-SCD    Filed 10/09/23    Page 12 of 15    Document 30

Further, Wisconsin law does not require a party to a foreclosure to answer in order to participate in the sale proceeds. This issue was considered by the Wisconsin Supreme Court in *Kienbaum v. Haberny*, 273 Wis. 413, 421 (1956). *Kienbaum* was a normal mortgage foreclosure case brought by the first mortgage holder. The holders of several liens subordinate to the first mortgage were joined as defendants. Two of those lienholders, however, did not file an answer in the case. The foreclosure sale yielded surplus funds from which subordinate lienholders could be paid. The two non-answering lienholders sought to have their liens paid from the surplus proceeds.

The Wisconsin Supreme Court held that under the relevant statute, the predecessor to Wisc. Stat. § 75.36(3), no answer was required in the tax foreclosure in order to preserve the right to surplus sale proceeds. *Id.*

US Bank does not dispute the County's right to take the property for the payment of unpaid taxes. And it does not dispute that the tax foreclosure judgment terminated US Bank's *lien interest* in the property. Rather, US Bank disputes the County's ability to retain all the money realized from the property thereafter. That was the issue before the Court in *Tyler,* and that is the issue presented in this case.

**CONCLUSION**

*Tyler* stands for the proposition that when dealing with traditional property interests, the government cannot deal itself the winning hand through legislative card-stacking. The statutory frameworks in place in Minnesota and Wisconsin effectively "forc[e] some people alone to bear public burdens which, in all fairness and

justice, should be borne by the public as a whole.'" Tyler 215 L. Ed. 2d at 577 (*quoting Armstrong*, 364 U. S., at 49, 80 S. Ct. 1563, 4 L. Ed. 2d 1554). The Takings Clause prohibits such a result. Although taxes are necessary to permit government to function, "[t]he taxpayer must render unto Caesar what is Caesar's, but no more." *Id.*

For the foregoing reasons, US Bank asks the Court to overrule the County's motion for judgment on the pleadings.

Respectfully, submitted,

*/s/ Marc E. Dann*
Marc E. Dann (Ohio 0039425)
DANNLAW
P.O. Box. 6031040
Cleveland, Ohio 44103
(216) 373-0539 telephone
(216) 373-0536 facsimile
notices@dannlaw.com


Casey Cross
(Wisconsin SBN: 1113936)
C.H. Law, LLC
11247 224th Ave
Bristol, WI 53104
262-221-3694
ccross@chlawllc.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

      I certify that the foregoing was served through the Court's ECF system on the date of filing and by email on counsel of record on October 9, 2023 upon Estee E. Scholtz, Deputy Corporation Counsel, corpcounsel@co.walworth.wi.us; Andrew T. Phillips and Matthew J. Thome, Counsel for Amicus Curiae, Wisconsin Counties Association, aphillips@attolles.com, mthome@attolles.com.

                              */s/ Marc E. Dann*
                              Marc E. Dann